UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANDY SMITH, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ANTARES PHARMA, INC., et al.,<br><br>Defendants. | Civil Action No. 17-8945 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two motions: (i) Faraj Touchan's ("Touchan") Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (ECF No. 7); and (ii) Serghei Lungu's ("Lungu") Motion for Appointment as Lead Plaintiff and Approval of Counsel (ECF No. 9).[1] Touchan and Lungu each filed opposition (ECF Nos. 12, 14) and Lungu replied (ECF No. 16). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Lungu's motion is granted and Touchan's motion is denied without prejudice. The Court

---

[1] Antares Investor Group (consisting of Tai Duong, Dennis Roof, Robert Szczodrowski, Qiang Xie, and Daniel DeYoe) and Rehan Khan also moved to be appointed lead plaintiff and to appoint lead counsel. (ECF Nos. 8, 10.) These parties, however, later filed Notices of Non-Opposition, acknowledging that, after review of the submissions made by other movants, it appears they do not possess the "'largest financial interest in the relief sought by the class' as required by the [Private Securities Litigation Reform Act ("PSLRA")]" and, accordingly, do not oppose the competing motions. (Antares Investor Group Not. of Non-Opp'n 2, ECF No. 13; Khan Not. of Non-Opp'n 2, ECF No. 17.) Both parties noted, however, that should the Court find other movants inadequate, then they stand ready to serve as lead plaintiff and counsel. (*Id.*)

appoints: Lungu as Lead Plaintiff; Pomerantz LLP as Lead Counsel; and Lite DePalma Greenberg, LLC as Liaison Counsel.

## I. BACKGROUND

This case is a putative securities class action brought on behalf of the investors who acquired Antares Pharma, Inc. ("Antares") securities between December 21, 2016 and October 12, 2017 ("Class Period"). Defendants Antares, Robert F. Apple, Antares's CEO, and Fred M. Powell, Antares's CFO, allegedly made materially deceptive and misleading disclosures about the FDA approval process of Xyosted in certain press releases and SEC filings. (*See generally* Compl. ¶¶ 20-32, ECF No. 1.) Specifically, Antares allegedly "made false and/or misleading statements and/or failed to disclose that: (i) Antares had provided insufficient data to the FDA in connection with its NDA for Xyosted; (ii) and accordingly, Antares had overstated the approval prospects for Xyosted; and (iii) as a result of the forgoing, Antares's public statements were materially false and misleading at all relevant times." (*Id.* ¶ 5.)

First-filed plaintiff Randy Smith initiated this action on October 23, 2017. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), Smith published notice via Globe Newswire on that same day, informing investors within the putative class that they had until December 22, 2017[2] to move for appointment as lead plaintiff in the action. (*Id.*; Morsy Decl. Ex. A, ECF No. 7-3.) Both Touchan and Lungu timely moved for appointment, as both motions were filed on December 22, 2017 (*see* ECF Nos. 7, 9), and both filed certifications pursuant to 15 U.S.C. § 78u-4(a)(2) (*see* ECF Nos. 7-4, 9-2).

---

[2] *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

## II. LEGAL STANDARD

The Court must appoint the most adequate plaintiff pursuant to the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the court to adopt a rebuttable presumption that the most adequate plaintiff is the person (or group of persons) who: (i) filed the complaint or moved to be appointed lead plaintiff; (ii) based on the court's determination, "has the largest financial interest in the relief sought by the class"; and (iii) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* § 78u-4(a)(3)(B)(iii)(I); *Aguilar v. Vitamin Shoppe, Inc.*, No. 17-6454, 2018 WL 1960444, at *5 (D.N.J. Apr. 25, 2018) (citing *Lewis v. Lipocine Inc.*, No. 16-4009, 2016 WL 7042075, at *4 (D.N.J. Dec. 2, 2016)). "At this stage, in the context of the PSLRA, Rule 23 requires that the party or parties seeking to represent a class (1) have claims or defenses that are typical of the claims or defenses of the class, (the 'typicality requirement') and (2) be able to fairly and adequately protect the interests of the class, (the 'adequacy requirement')." *Aguilar*, 2018 WL 1960444, at *4 (citing Fed. R. Civ. P. 23(a); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001); *Lewis*, 2016 WL 7042075, at *4.) The Court will conduct a further analysis of the Rule 23 requirements in connection with its consideration of any motion for class certification. *Id.*

"Once a presumptive lead plaintiff is located, the court should then turn to the question [of] whether the presumption has been rebutted." *In re Cendant*, 264 F.3d at 268. To rebut the presumption, a purported class member must provide proof "that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Sklar v. Amarin Corp. PLC*, No. 13-6663, 2014 WL 3748248, at *5 (D.N.J. July 29, 2014). "A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense

3

that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006).

### III. DISCUSSION

#### A. "Largest Financial Interest"

In determining which movant has the largest financial interest in the relief sought by the litigation, "courts should consider (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant*, 264 F.3d at 262 (citing *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997)). "The most critical among these factors is the approximate loss suffered." *Patel v. Zoompass Holdings, Inc.*, No. 17-3831, 2017 WL 4179814, at *1 (D.N.J. Sept. 20, 2017) (citing as examples *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 WL 22849604, at *12 (E.D. Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 WL 1221353, at *1, (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D.N.J. 2003)).

Touchan states that he purchased a total of 30,000 Antares shares and 26,435 net Antares shares during the Class Period, spent $110,565.86 in net funds, and incurred losses in an amount of $49,236.66.[3] (Touchan's Moving Br. 6, ECF No. 7-1.) Lungu, on the other hand, claims that he purchased 50,000 Antares shares and retained 40,000 shares, spent $189,158 on his purchases, and suffered a loss of $61,763.69. (Lungu's Moving Br. 5, ECF No. 9-1.)

---

[3] Lungu asserts that Touchan actually suffered a maximum loss of $41,295 because his transaction history reflects share prices outside of the range of prices during the Class Period, and accordingly, his claimed losses were inaccurately calculated. (Lungu's Opp'n Br. 4 n.4, ECF No. 12.) The difference in amounts, however, is not material to the Court's analysis.

4

Touchan asserts that when determining which movant is the presumptively most adequate plaintiff, courts afford the greatest weight to the approximate losses suffered and only assess the other movants' suitability if the presumptive plaintiff does not comport with Rule 23. (Touchan's Opp'n Br. 2-3, ECF No. 14.) When movants have claimed similar amounts of losses, however, Touchan asserts that courts may deviate from this process. (*Id.* at 3.) Here, according to Touchan, he and Lungu suffered roughly equal losses of $49,236.66 and $61,763.69, respectively—a difference of only about $12,500. (*Id.* at 3-4.) Accordingly, Touchan asserts that for the purposes of the Court's analysis, both "movants have equivalent financial interests." (*Id.* at 4.) Further, Touchan asserts that Lungu is a day trader because he bought and sold 10,000 shares on October 12, 2017 and is, therefore, subject to a unique defense that renders him inadequate and atypical. (*Id.* at 6-7.) Touchan asserts that Lungu may not be able to invoke the fraud-on-the-market presumption of reliance and cites examples where courts have disqualified lead plaintiff movants as a result of their day trading activities.[4] (*Id.* at 7-8.) Finally, Touchan asserts that even if the Court does not find Lungu to be inadequate and atypical, because both movants have "roughly equal interests" and neither has a "significantly larger" interest, both should be appointed co-lead plaintiffs. (*Id.* at 9-10.) Finally, according to Touchan's calculations, he and Lungu have equivalent stakes in the litigation because the difference in their estimated recoveries is only $263.06. (*Id.* at 10.)

Lungu asserts that he has the largest financial interest in the relief sought because he

---

[4] The fraud-on-the market theory allows "'reliance [to] be presumed when a fraudulent misrepresentation or omission impairs the value of a security traded in an efficient market.'" *Rabin v. NASDAQ OMS PHLX, LLC*, 712 F. App'x 188, 195 (3d Cir. 2017) (quoting *Malack v. BDO Seidman, LLP*, 617 F.3d 743, 747 (3d Cir. 2010)). "This presumption is based on the hypothesis that the price of a stock 'in an open and developed securities market . . . is determined by the available material information regarding the company and its business.'" *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988)).

suffered the largest monetary loss and retained the most Antares shares after the Class Period. (Lungu's Opp'n Br. 3-4.) He further argues that the PSLRA requires that to overcome the presumption of adequacy, any challenger must present "proof" that the presumptive lead plaintiff is, in fact, atypical or inadequate. (*Id.* at 4-5 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).) According to Lungu, he and Touchan did not suffer equivalent losses because his loss is about fifty percent greater than Touchan's loss. (Lungu's Reply Br. 2, 4, ECF No. 16.) Lungu distinguishes cases Touchan cited in his brief and states that the comparative losses in those cases were different (*e.g.*, $351,916 vs. $368,202, a five percent difference, and $1.78 million vs. $1.82 million, a two percent difference). (*Id.* at 4.) Lungu asserts that: (i) he is not a "day trader" pursuant to FINRA Rule 4210, which defines "day trading" as "the purchasing and selling or the selling and purchasing of the same security on the same day in a margin account"; (ii) Touchan has cited no case where a court found a presumptive lead plaintiff with a similar trading history to be a day trader (Lungu's Opp'n Br. 4); and (iii) Touchan's argument is baseless and cannot serve as the "proof" required to rebut the presumption of Lungu's adequacy (Lungu's Reply Br. 6). Lungu notes that he only made four purchases of Antares stock during the Class Period and only once purchased and sold shares on the same day.[5] (*Id.*)

### B. Rule 23 Adequacy and Typicality

Both movants assert that they meet the typicality and adequacy requirements of Rule 23 for similar reasons: (i) the factual and legal bases of their claims are typical to the class, as they purchased Antares shares during the Class Period, were damaged by Defendants' allegedly false and misleading statements, and as a result, have federal securities law claims; and (ii) their interests

---

[5] Lungu's transaction history is as follows: October 2, 2017, purchase of 10,000 shares; October 4, 2017, purchase of 20,000 shares; October 9, 2017, purchase of 10,000 shares; and October 12, 2017, purchase and sale of 10,000 shares. (Lungu's Reply Br. 6.)

are aligned with and not antagonistic to the putative class's interests. (Touchan's Moving Br. 6-7; Lungu's Moving Br. 6-7.) Finally, Touchan argues that counsel of his choice, Faruqi & Faruqi, LLP has extensive experience handling complex class actions and provides multiple examples of cases in which the firm was appointed lead counsel, while Lungu states that he has chosen Pomerantz LLP as Lead Counsel and Lite DePalma Greenberg, LLC as Liaison Counsel, both of whom possess broad experience in litigating class actions and securities cases. (Touchan's Moving Br. 8-10; Lungu's Moving Br. 8.)

### C. Analysis

The Court finds that Lungu is the presumptively most adequate plaintiff because he suffered the greatest loss, the factor that carries the most weight in the Court's analysis. Lungu also retained a greater number of shares. *See Patel*, 2017 WL 4179814, at *1-2. The Court finds that Touchan has not carried his burden to rebut the presumption of Lungu's adequacy. In support of the proposition that Lungu and Touchan suffered essentially equivalent amounts of loss, Touchan cites two out-of-circuit district court cases that involved losses of different magnitude. The Court further finds that Lungu sufficiently satisfies the typicality and adequacy requirements of Rule 23 at this stage of the litigation. Based on only one same-day purchase and sale, Touchan asserts that Lungu is a day trader and, therefore, subject to a special defense. Finally, the Court finds the counsel of Lungu's choice, Pomerantz LLP and Lite DePalma Greenberg, LLC, to be sufficiently experienced in class actions and securities litigation to serve as Lead Counsel and Liaison Counsel, respectively.

The Court notes, however, that if, as the litigation progresses, circumstances warrant that the Court revisit its decision, "the decision reached here regarding appointment of lead plaintiff and lead counsel may be re-opened." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v.*

*LaBranche & Co.*, 229 F.R.D. 395, 408 (S.D.N.Y 2004) (citing *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) ("The district court's order designating a lead plaintiff is not a conclusive, immutable determination of the issue. It can be revisited if circumstances warrant."); *In re Oxford Health Plans*, 182 F.R.D. 42, 51 (S.D.N.Y. 1998) (reserving the right to alter a co-lead plaintiff structure "at any time and for any reason"); *cf. Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 60 (D. Mass. 1996) ("This court also concludes that its determination to appoint a person or persons as lead plaintiff must be without prejudice to the possibility of revisiting that issue in considering a motion for class certification."); *Metro Services Inc. v. Wiggins*, 158 F.3d 162, 165 (2d Cir. 1998) (holding that an order appointing a lead plaintiff was not conclusive and not appealable where the district court had specifically reserved the right to revisit the designation)).

## IV. CONCLUSION

Accordingly, for the reasons set forth above, Lungu's Motion for Appointment as Lead Plaintiff and Approval of Counsel is granted, and Touchan's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel is denied. The Court appoints Lungu as Lead Plaintiff, Pomerantz LLP as Lead Counsel, and Lite DePalma Greenberg, LLC as Liaison Counsel. An order consistent with this Memorandum Opinion shall be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Date: July 27th, 2018